******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ROBINSON, C. J., with whom McDONALD, J., joins, and ECKER, J., joins as to part II, concurring in the judgment. I join in the judgment of the court upholding the conviction of the defendant, James A., of numerous crimes, including sexual assault and threatening offenses.[1] I write separately because I part company from the majority's analysis of the defendant's claims on appeal in two significant ways. First, I conclude that the trial court abused its discretion when it joined the defendant's threatening in the second degree and disorderly conduct charges (threatening case) for trial with his sexual assault, risk of injury to a child, and strangulation in the first degree charges (sexual assault case), but I ultimately agree with the majority that this improper joinder was harmless error not requiring reversal of the affected convictions, namely, those in the threatening case. Second, I reach the merits of and agree with the defendant's claim that the trial court improperly denied his request for permission to testify about his prior felony convictions without opening the door to disclosing the names of those underlying felonies as a remedy for an inadvertent disclosure about his prior incarceration by one of the state's witnesses. As with the first claim, I conclude that this ruling was harmless error not requiring reversal. Accordingly, I concur in the judgment of the court.[2]

I

I begin my discussion by addressing the defendant's joinder claim, which requires the court to consider the standard for cross admissibility for purposes of joining for trial, pursuant to Practice Book § 41-19,[3] the charges in the separate sexual assault and threatening cases. See footnote 1 of this opinion. As the majority aptly observes, "[the] General Statutes and rules of practice expressly authorize a trial court to order a defendant to be tried jointly on charges arising from separate cases." (Internal quotation marks omitted.) Part I of the majority opinion, quoting *State* v. *Rivera*, 260 Conn. 486, 490, 798 A.2d 958 (2002). In *State* v. *LaFleur*, 307 Conn. 115, 159, 51 A.3d 1048 (2012), and *State* v. *Payne*, 303 Conn. 538, 544–50, 34 A.3d 370 (2012), two cases discussing the standards for reviewing a trial court's ruling on a motion pertaining to joinder, "we rejected the notion of a blanket presumption in favor of joinder and clarified that, when charges are brought in separate informations, and the state seeks to join those informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. . . . The state may satisfy this burden by proving, by a preponderance of the evidence, either that the evidence in the cases is cross admissible *or* that the defendant will not

be unfairly prejudiced pursuant to the factors set forth in *State* v. *Boscarino*, [204 Conn. 714, 722–24, 529 A.2d 1260 (1987)].[4] Although the state bears the burden of proof in the trial court, [i]t is the defendant's burden on appeal to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury . . . . As we emphasized in *LaFleur*, our appellate standard of review remains intact. Accordingly, [i]n deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . *State* v. *Devon D.*, 321 Conn. 656, 664–65, 138 A.3d 849 (2016)." (Citation omitted; emphasis in original; footnote added; internal quotation marks omitted.) Part I of the majority opinion.

"A long line of cases establishes that the paramount concern is whether the defendant's right to a fair trial will be impaired. Therefore, in considering whether joinder is proper, this court has recognized that, whe[n] evidence of one incident would be admissible at the trial of the other incident, separate trials would provide the defendant no significant benefit. . . . Under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial. . . . Accordingly, we have found joinder to be proper [when] the evidence of other crimes or uncharged misconduct [was] cross admissible at separate trials. . . . [When] evidence is cross admissible, therefore, our inquiry ends. . . . *State* v. *LaFleur*, supra, 307 Conn. 155; see *Leconte* v. *Commissioner of Correction*, 207 Conn. App. 306, 327, 262 A.3d 140 ([I]t is well established that [when] the evidence in one case is cross admissible at the trial of another case, the defendant will not be substantially prejudiced by joinder. . . . Our case law is clear that a court considering joinder need not apply the *Boscarino* factors if evidence in the cases is cross admissible" . . .), cert. denied, 340 Conn. 902, 263 A.3d 387 (2021)." (Internal quotation marks omitted.) Part I of the majority opinion.

I agree generally with the majority's response to the defendant's claims with respect to the requirements for establishing cross admissibility for purposes of joinder, and I particularly agree that, under *State* v. *Crenshaw*, 313 Conn. 69, 95 A.3d 1113 (2014), and *State* v. *LaFleur*, supra, 307 Conn. 115, the fact that evidence may be admitted only for a limited purpose in one of the cases to be joined does not defeat a finding of cross admissibility for purposes of joinder. See part I of the majority opinion. As the majority observes, requiring complete congruence as to the admissibility of the evidence in both cases is inconsistent with the principle that, "in making the discretionary, pretrial decision to join multiple cases, [the trial court] rules on whether the evidence *could* be admissible, not whether the evidence actually *is* admitted." (Emphasis in original; internal quotation

marks omitted.) Id., quoting *State* v. *Crenshaw*, supra, 89. Moreover, requiring the state to establish full congruence would defeat the benefits of judicial economy and context for the trier that are afforded by joinder, with appropriate jury instructions serving to mitigate any prejudicial effect from that joinder.[5] See *State* v. *Crenshaw*, supra, 89–90.

I emphasize, however, that joinder on the basis of cross admissibility requires that evidence of the crimes set forth in each separate information be admissible at the trials of the other incidents. See *State* v. *LaFleur*, supra, 307 Conn. 154–55. Put differently, cross admissibility does not rely on the specific evidence that is required to prove every element of each of the crimes charged in each case but, rather, whether "evidence of one incident would be admissible at the trial of the other incident  . . . ." (Internal quotation marks omitted.) *State* v. *Anderson*, 318 Conn. 680, 692, 122 A.3d 254 (2015); see *State* v. *Crenshaw*, supra, 313 Conn. 84 ("[w]e consistently have found joinder to be proper if we have concluded that the evidence of other crimes or uncharged misconduct would have been cross admissible at separate trials" (internal quotation marks omitted)). Thus, our inquiry is whether evidence of the conduct giving rise to the threatening and disorderly conduct charges could be admissible in the sexual assault case, and whether evidence of the conduct giving rise to the sexual assault, risk of injury, and strangulation charges could be admissible in the threatening case.[6] As the majority states, if we determine that the evidence is not cross admissible in each case, then we consider whether joinder is nevertheless proper insofar as the defendant has not been unfairly prejudiced under the *Boscarino* factors.

With respect to the first half of the cross admissibility inquiry, I agree with the majority's conclusion that the defendant's violent response to the accusation of sexual assault, which led to the threatening and disorderly conduct charges, was relevant to establishing his consciousness of guilt in the sexual assault case, as well as to proving fear on the part of J and L that led to the delayed disclosure of their sexual assault allegations. I further agree with the majority's conclusion that the prejudicial effect of this evidence did not outweigh its probative value in the sexual assault case and that joinder of the charges was not otherwise unduly prejudicial with respect to the defense of the sexual assault case.

Where I part company from the majority is the second half of the cross admissibility inquiry, namely, our consideration of the reverse—whether the trial court correctly determined that evidence of the conduct giving rise to the sexual assault case could be admissible in the threatening case. Like the majority, I agree with the state's argument that the evidence that the defendant sexually assaulted J and L establishes the requisite

intent in the threatening case, namely, that the defendant threatened to commit a "crime of violence with the intent to terrorize another person . . . ." General Statutes § 53a-62 (a) (2).

Evidence of other crimes is admissible for nonpropensity purposes, "such as to show *intent*, an element [of] the crime, identity, malice, *motive* or a system of criminal activity." (Emphasis added; internal quotation marks omitted.) *State* v. *Anderson*, supra, 318 Conn. 693; see Conn. Code Evid. § 4-5 (a) and (c). "Such evidence is admissible if: (1) it is relevant and material to at least one of the circumstances encompassed by the exceptions; and (2) its probative value outweighs its prejudicial effect." *State* v. *James G.*, 268 Conn. 382, 390, 844 A.2d 810 (2004). For purposes of relevance, I cannot say that the evidence of the conduct giving rise to the sexual assault, risk of injury, and strangulation charges has no logical bearing on the probability that the defendant intended to terrorize the relatives of his victims following their disclosure of his sexual abuse. See, e.g., *State* v. *Bermudez*, 341 Conn. 233, 249, 267 A.3d 44 (2021) ("Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities [or be conclusive] . . . ." (Internal quotation marks omitted.)). Nor can I say that the evidence bears no relevance toward establishing a motive for the defendant's threats and conduct. See *State* v. *Lopez*, 280 Conn. 779, 795, 911 A.2d 1099 (2007) ("[e]vidence of prior misconduct that tends to show that the defendant harbored hostility toward the intended victim of a violent crime is admissible to establish motive").

However, I still must determine whether the probative value of the evidence of the specific acts of sexual assault outweighs its prejudicial effect. See, e.g., *State* v. *James G.*, supra, 268 Conn. 390. I part company with the majority on this point. If the probative value is outweighed by its prejudicial effect, then this evidence was inadmissible in the threatening case, and the evidence in the two cases is not cross admissible. "[T]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the [party against whom the evidence is offered] but whether it will *improperly* arouse the emotions of the jur[ors]." (Emphasis added; internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 544, 821 A.2d 247 (2003); see Conn. Code Evid. § 4-3.

Nothing in the record supports the inference that the trial court specifically considered the prejudicial effect that the sexual assault, risk of injury, and strangulation charges would have on the threatening case.[7] Nerverthe-

less, detailed evidence that the defendant sexually assaulted two children on numerous occasions and strangled a child to the point of unconsciousness certainly would improperly arouse the emotions of the jurors in the threatening case to the extent that its prejudicial effect exceeds the probative value in that case. See *State* v. *Ellis*, 270 Conn. 337, 377, 852 A.2d 676 (2004) ("[t]he effect of testimony regarding the intimate details of sexual misconduct on a jury's ability to consider separate charges in a fair and impartial manner cannot be underestimated"). In my view, this evidence served to elevate the defendant from someone whose alcohol fueled ill temper led him to commit acts that were both violent and offensive to one who is a genuine sexual predator.[8] This has, in my view, the effect of transforming the nature of the threatening case in the eyes of the jurors.

I acknowledge the state's arguments, echoed by the majority opinion, that the two cases were factually related and that "to place the threats and conduct [following the defendant's wedding] in context, it would be necessary at any trial on those charges to elicit evidence of [the defendant's] sexual assaults of J and L . . . ."[9] The majority also posits that evidence of the specific acts of sexual abuse is "relevant to the question of whether the persons at whom the threats were directed and others would interpret them as a genuine threat of violence or, instead, as drunken bluster." Part I of the majority opinion. The majority questions rhetorically "how the threatening and disorderly conduct charges could be tried *without* introducing any evidence related to the sexual assault cases." (Emphasis in original.) Id. I respectfully disagree. That relevant context, and the motive for the defendant's outbursts, would have been amply provided by S's *accusations* that the defendant sexually abused J and L. Indeed, the evidence of S's accusations, including calling the defendant a "child molester" and a "pedophile son of a bitch," is precisely what the state elicited in limited fashion at trial to provide context for the defendant's conduct on the nights leading to the threatening and disorderly conduct charges.[10] Beyond those accusations, specific evidence of the defendant's sexually assaultive acts against J and L, including his strangulation of J, would serve only to inflame the jurors with respect to the threatening case. Accordingly, my review of the record shows that the prejudicial effect of the evidence did outweigh its probative value, and the evidence of the specific conduct giving rise to the sexual assault case, therefore, was inadmissible in the threatening case. Thus, the evidence was not cross admissible with respect to the threatening case, and I move to an analysis of the *Boscarino* factors to determine whether joinder was proper.

In *State* v. *Boscarino*, supra, 204 Conn. 722–24, this court "identified several factors that a trial court should

consider in deciding whether a severance [or denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *LaFleur*, supra, 307 Conn. 156.

As the majority aptly notes, there is substantial overlap between the second *Boscarino* factor and the analysis by which we determine whether otherwise relevant evidence is more prejudicial than probative for purposes of admissibility.[11] Thus, I turn briefly to the defendant's claims with respect to the second *Boscarino* factor.[12] With respect to the second *Boscarino* factor, the defendant argues that the crimes charged in the sexual assault case are both brutal and shocking, as they related to the repeated sexual assault and strangulation of two minor children, who were both members of the defendant's family. In response, the state posits instead that the defendant has failed to demonstrate "that the relative levels of brutal or shocking conduct unduly prejudiced one charge or another." Largely for the same reasons that led me to conclude that the prejudicial value of the specific evidence of sexually assaultive acts sharply outweighs its probative value for purposes of cross admissibility with the threatening case, I agree with the defendant and conclude that the second *Boscarino* factor was present.

"Whether one or more offenses involve brutal or shocking conduct likely to arouse the passions of the jurors must be ascertained by comparing the relative levels of violence used to perpetrate the offenses charged in each information." (Internal quotation marks omitted.) *State* v. *LaFleur*, supra, 307 Conn. 160. "The second factor in *Boscarino* permits joinder if, when comparing the defendant's conduct in separate incidents, his alleged conduct in one incident is not so shocking or brutal that the jury's ability to consider fairly and objectively the remainder of the charges is compromised." Id., 160–61. As both cases involved violence, we must determine whether the defendant's conduct in the sexual assault case, as the more violent of the crimes, was particularly shocking or brutal in comparison to his conduct in the threatening case.

Given the particular issues in this case, my conclusion that specific evidence of the defendant's sexually assaultive acts is more prejudicial than probative for purposes of admissibility in the threatening case because of their relative brutality reduces my analysis of the second

*Boscarino* factor almost to a matter of form. As I stated previously, the sexual assault case contained allegations of digital penetration, cunnilingus, and analingus involving two minor children, as well as the strangulation of one minor child to the point of unconsciousness. In comparison, the threatening case involved violent threats and acts of property damage, namely, punching a hole in a wall and flipping over a table, and the defendant's making highly obscene gestures while throwing an open beer can at someone who was pointing a firearm at him. It is beyond cavil that the defendant's conduct in the sexual assault case, which was directed at two young children, was significantly more brutal and shocking than his conduct in the threatening case. See, e.g., *State* v. *Ellis*, supra, 270 Conn. 377 ("We have recognized that the crime of sexual assault [is] violent in nature, irrespective of whether it is accompanied by physical violence. Short of homicide, [sexual assault] is the *ultimate violation of self*. It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist." (Emphasis in original; internal quotation marks omitted.)); cf. *State* v. *Payne*, supra, 303 Conn. 552 (murder case "was significantly more brutal and shocking" than jury tampering case); *State* v. *Ellis*, supra, 343–48, 378 (case in which defendant groped minor's breasts and in between her legs, and attempted to force her to perform oral sex on him and to kiss him, was "substantially more egregious" than cases in which defendant only groped victims' breasts). Thus, I conclude that the second *Boscarino* factor was present and that the evidence from the sexual assault case was prejudicial to the defendant in the threatening case.

As a result of the presence of a *Boscarino* factor, I now must determine whether the trial court's jury instructions cured any prejudice that might have occurred from the improper joinder, rendering that error harmless. See, e.g., *State* v. *Randolph*, 284 Conn. 328, 338, 933 A.2d 1158 (2007). In considering the curative effects of the jury instructions, I also consider the relative strength of the state's case as to the threatening charges.

"When reviewing claims of error, we examine first whether the trial court abused its discretion, and, if so, we next inquire whether the error was harmless. . . . When an error is not of constitutional magnitude, the defendant bears the burden of demonstrating that the error was harmful. . . . The proper standard for review of a defendant's claim of harm is whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 552–53.

Having reviewed the record, I have the requisite fair assurance that the improper joinder of the charges did not substantially sway the jury's verdict as to the threatening case. First, the jury instructions in this case mitigated the effect of the improper joinder by admonishing the jury to consider all counts separately. During its preliminary instructions to the jury, the trial court twice admonished the jury with the following statement: "Each charge against the defendant is set forth in the information as a separate count, and you must consider each count separately in deciding this case." The trial court again instructed the jury at the close of trial that it was to consider each charge separately.[13] See *State* v. *Payne*, supra, 303 Conn. 553–54 ("The record reveals that, during voir dire, the trial court instructed the potential jurors that, although the cases had been joined for judicial economy, the jurors, if called [on] to serve, must 'treat each and every case separately. . . .' The court expanded [on] this warning multiple times throughout the trial, including after the jury was impaneled, during the state's presentation of evidence, and in its final charge." (Footnotes omitted.)); *State* v. *Perez*, 147 Conn. App. 53, 110–11, 80 A.3d 103 (2013) (instructing jury as to separate nature of each charge at conclusion of state's evidence regarding one case, on first day of and during state's presentation of evidence regarding other case, and during jury charge), aff'd, 322 Conn. 118, 139 A.3d 654 (2016). These instructions have recently been held adequate "[to cure] the risk of substantial prejudice to the defendant and . . . [to preserve] the jury's ability to fairly and impartially consider the offenses charged in the jointly tried cases."[14] *State* v. *McKethan*, 184 Conn. App. 187, 200, 194 A.3d 293, cert. denied, 330 Conn. 931, 194 A.3d 779 (2018); see *State* v. *Norris*, 213 Conn. App. 253, 285, 287, 277 A.3d 839, cert. denied, 345 Conn. 910, 283 A.3d 980 (2022).

Second, given the general adequacy of these instructions, I consider the strength of the state's evidence in the threatening case. See, e.g., *State* v. *Payne*, supra, 303 Conn. 554; *State* v. *Norris*, supra, 213 Conn. App. 285–86. I agree with the majority that the evidence was overwhelming, as multiple witnesses—including one of the defendant's own witnesses—testified consistently about the defendant's violent conduct after S's accusations, including his threats to decapitate those who made allegations against him. Although, as the defendant points out, all the witnesses had consumed at least some alcoholic beverages at the wedding prior to witnessing the defendant's conduct, there is no evidence that any of those witnesses were under the influence of alcohol to the extent it affected their perception. Indeed, all the witnesses testified that they had sobered up by that point, with no evidence in the record suggesting otherwise. Further, the accounts of the defendant's conduct at the after-party in Naugatuck, specifically, his punching holes in the wall, are corroborated by

photographic evidence of the repairs to the wall. Moreover, the testimony of Sergeant Matthew Geddes established the disorderly conduct charge portion of the threatening case without challenge, insofar as he testified that the defendant was the primary aggressor during the altercation with A and M during which M shot him. See footnote 3 of the majority opinion and accompanying text.

Finally, and most telling, defense counsel's closing argument indicates that the threatening charges were not a significant factual issue in the trial of this joined case, insofar as defense counsel did not contest the underlying allegations, instead focusing on the sexual assault charges and referring to the events on the night of the wedding only to point out that, when the police responded to a neighbor's noise complaint during the after-party, no one in the family told them about S's accusation that the defendant had sexually abused J and L. See, e.g., *State* v. *Osimanti*, 299 Conn. 1, 20–23, 6 A.3d 790 (2010) (reviewing summations to discern significant factual issues in case); cf. *State* v. *Favoccia*, 306 Conn. 770, 811–13, 51 A.3d 1002 (2012) (reviewing prosecutor's summation in determining that improperly admitted expert testimony with effect of vouching for teenage victim was harmful given extent to which victim's credibility was significant issue in sexual assault trial). Indeed, in strategically conceding that the defendant was not "a saint," while simultaneously making the point that he was also not a child molester, defense counsel acknowledged significant portions of the events, including that the defendant "was drunk the night of the wedding," that he had thrown the wedding ring at D during their altercation, and that "things got out of hand" to the point that M shot him the following evening. To this point, in concluding her closing, defense counsel asked only whether the state had met its burden of proof with respect to the sexual assault and strangulation charges. Accordingly, given the strength of the state's evidence in the threatening case and the jury instructions, I have a fair assurance that the otherwise improper joinder of the threatening case with the sexual assault case was harmless error not requiring reversal.

## II

I next address the defendant's claim that the trial court's instruction to the jury to disregard a statement by M referring to the defendant's prior incarceration was insufficient to remedy the prejudice resulting from that improper testimony and, therefore, that the trial court abused its discretion by denying the defendant his requested additional remedy of allowing him to testify as to the nonsexual nature of his prior felony record without opening the door to disclosing the names of the underlying felonies. The defendant also argues that, because the state had a weak case as to each of the charges, the error, which functioned to preclude the

defendant from testifying in his own defense, was not harmless. In response, the state argues that the trial court was well within its discretion to rule that, if the defendant testified as to his prior felony record, then the state could inquire into the names of his prior felony convictions, and that, even if the trial court's ruling was an abuse of its discretion, any error was harmless. Although I agree with the defendant's argument that the trial court abused its discretion by denying him his requested remedy, I also agree with the state that the error was harmless and does not require reversal of the convictions.

The record reveals the following additional facts and procedural history that are relevant to our consideration of this claim. On the first day of trial, prior to bringing out the jury, defense counsel asked the trial court for a ruling on the defendant's motion in limine to limit the introduction of evidence of his prior convictions. The prosecutor responded that he had already "admonished all of [the state's] witnesses" and "made them aware of what they are not allowed to say . . . in court." Based on the prosecutor's response, the court stated that, "technically," it would grant the defendant's motion.

During the trial, the prosecutor conducted a direct examination of M, the victims' grandfather. While testifying about the night of the defendant's wedding to D and the commotion that had ensued at the after-party, the prosecutor asked M whether he had heard the defendant say anything. M answered that the defendant "was just yelling [that] he wasn't going back to jail . . . ." The prosecutor immediately interjected and asked that the jury be excused. The prosecutor then asked the court to strike the statement from the record and informed the court that the witness had been "admonished repeatedly not to say anything about" the defendant's history of incarceration, to which M responded, "[y]eah, I was." Both parties agreed that the testimony should be stricken and that a curative instruction should be given to the jury. Upon the jury's return, the trial court promptly stated: "I'm going to strike [M's] last statement. I will order you . . . to not consider that at any point in time in your deliberation[s]. Reminding you, and you will get full instructions, that, when a statement or an exhibit or an item is stricken, you cannot consider that as part of your deliberations."[15] The prosecutor then continued with his examination, asking M leading questions to avoid any other improper disclosures.

The next day, following the close of the state's case-in-chief, defense counsel asked the trial court to modify its ruling regarding the defendant's prior convictions. Defense counsel noted that, the day before, M had implied that the defendant had a prior criminal record when he mentioned the defendant's statement that he

was "not going back to jail . . . ." Defense counsel thus sought permission for the defendant to testify that he was "a convicted felon of a nonsexual crime," while also precluding the state from mentioning that those felony convictions were for robberies or the details of those crimes. The prosecutor responded that the defendant's prior record did not consist of one felony conviction but, rather, of seven convictions, and argued that, if evidence of the felonies came in, they should be named because they were relevant to his truthfulness and veracity, particularly because the defendant planned to present a character witness in his defense. The trial court denied defense counsel's request, reasoning that the jury had been instructed to ignore the improper testimony and that, if the defendant "open[ed] the door" to the convictions, the court would allow the prosecutor to inquire as to the names of the felonies but not the details, so as to avoid getting into collateral issues.

The issue before us is whether the trial court abused its discretion in determining that, if the defendant testified about the nonsexual nature of his prior felony convictions as a remedy for M's inadvertent disclosure of the defendant's past incarceration, he necessarily would have opened the door to disclosing the names of the underlying felonies through cross-examination by the state.[16] Section 6-8 (a) of the Connecticut Code of Evidence governs the scope of cross-examination and subsequent examinations.[17] "Generally, a party who delves into a particular subject during the examination of a witness cannot object if the opposing party later questions the witness on the same subject. . . . The party who initiates discussion on the issue is said to have opened the door to rebuttal by the opposing party." (Internal quotation marks omitted.) *State* v. *Mark T.*, 339 Conn. 225, 236, 260 A.3d 402 (2021). "Even though the rebuttal evidence would ordinarily be inadmissible on other grounds, the court may, in its discretion, allow it [*when*] *the party initiating inquiry has made unfair use of the evidence. . . .* [T]his rule operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Emphasis added; internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 557. "In determining whether otherwise inadmissible evidence should be admitted to rebut evidence offered by an opposing party, the trial court must carefully consider whether the circumstances of the case warrant further inquiry into the subject matter . . . and *should permit it only to the extent necessary to remove any unfair prejudice* [that] might otherwise have ensued from the original evidence . . . . Accordingly, the trial court should balance the harm to the state in restricting the inquiry with the prejudice suffered by the defendant

in allowing the rebuttal. . . . We will not overturn the trial court's decision unless the trial court has abused its discretion." (Emphasis added; internal quotation marks omitted.) Id. "In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Mark T.*, supra, 232.

The trial court's decision indicates that it determined that the harm to the state in restricting the inquiry about the exact convictions would be greater than the prejudice the defendant would have suffered from allowing that questioning by the state. The trial court did not, however, discuss what the harm to the state would have been from the defendant's proffered testimony. Nor did the state offer any principled reason as to why it insisted on inquiring into the names of the felonies[18] when the defendant's request was made solely *because of misconduct committed by the state's witness* in the first instance. This is exactly what our case law warns against. See *State* v. *Griggs*, 288 Conn. 116, 141, 951 A.2d 531 (2008) ("[t]he doctrine of opening the door cannot . . . be subverted into a rule for injection of prejudice" (internal quotation marks omitted)). I conclude that the trial court should have considered whether the circumstances of the case warranted further inquiry into the subject matter, as well as the extent to which the further inquiry by the state was necessary to remove any prejudice introduced by the defendant's proposed testimony, namely, that his prior convictions were of a nonsexual nature. This is particularly so given that the defendant's testimony was proposed as a curative measure to address the prejudicial effect of improper testimony from one of the *state's* witnesses in the first instance. Thus, I conclude that the trial court abused its discretion in allowing the prosecutor to inquire further into the specific nature of the defendant's felony record given the circumstances under which the defendant proposed to testify.

I acknowledge that the trial court stated that it would limit the rebuttal evidence to only the names of the felonies to avoid raising collateral issues. Additionally, the trial court struck M's disclosure from the record and instructed the jury that it was prohibited from considering the testimony it had heard prior to its dismissal. However, our case law does not support a conclusion that the trial court was within its discretion when it concluded that the defendant would have opened the door to further inquiry by testifying about the nonsexual nature of his prior convictions, given that it was offered solely to remedy the prejudicial effect of M's improper testimony about the defendant's history of incarceration in the first instance. Cf. *State* v. *Griggs*, supra, 288 Conn. 139–40 (trial court did not abuse its discretion in concluding that defendant opened door to evidence of his four domestic violence convictions involving

assaultive or threatening behavior when defendant testified "that he had only '[a] couple' of domestic violence convictions and had never been engaged in any kind of physical assault"); *State* v. *Gonzalez*, 272 Conn. 515, 543–44, 864 A.2d 847 (2005) (trial court did not abuse its discretion in concluding that defendant opened door to evidence to rebut testimony introduced by defense regarding witness' disbelief of allegations); *State* v. *Phillips*, 102 Conn. App. 716, 733–37, 927 A.2d 931 (trial court did not abuse its discretion in admitting evidence of prior conviction when defendant's testimony implied that he had no prior convictions), cert. denied, 284 Conn. 923, 933 A.2d 727 (2007). The present case is also distinguishable from those cases in which the trial court properly allowed further inquiry in order to cure prejudice caused by the defendant's own testimony, insofar as the purpose of the defendant's proposed testimony in the present case was to cure prejudice occasioned in the first instance by the improper testimony of M, who was the *state's* witness.[19] Cf. *State* v. *Graham*, 200 Conn. 9, 14, 509 A.2d 493 (1986) ("The introduction of the other crimes evidence *was not essential* to cure the unfairness, if any, that the state may have suffered by . . . defense counsel's limited inquiry into the other robberies. The trial court therefore abused its discretion . . . ." (Emphasis added.)).

The jury heard an inadmissible statement from the state's witness that the defendant desired to remedy with a brief reference to the nonsexual nature of his prior convictions, and there is nothing in the record or presented by the state in the present appeal as to how this testimony would have harmed the state, an inquiry required by the opening the door doctrine. See *State* v. *Payne*, supra, 303 Conn. 557. On the other hand, the jury's hearing further testimony about convictions that are considered to speak to truth and veracity would undoubtedly have introduced additional prejudice to the defendant, on top of any created in the first instance by M's improper testimony about the defendant's history of incarceration. Therefore, it was unreasonable for the trial court to determine that the harm to the state in restricting the inquiry about the exact convictions would be greater than the prejudice the defendant would have suffered from allowing further inquiry by the state.[20] Accordingly, I conclude that the trial court abused its discretion in determining that the defendant's proposed testimony regarding his prior felony convictions opened the door to inquiry by the state regarding the names of the underlying felonies.

I now must determine whether this error was harmless. "The law governing harmless error for nonconstitutional evidentiary claims is well settled. When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [W]hether [an improper ruling] is harmless in a particular case

depends [on] a number of factors, such as the importance of the witness' testimony in the [defendant's] case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most [important], we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Fernando V.*, 331 Conn. 201, 215, 202 A.3d 350 (2019). Accordingly, I must consider whether the jury's not hearing that the defendant's prior convictions were of a nonsexual nature substantially affected the verdict.

The defendant argues that, without his proposed testimony, the jury might have speculated as to whether his prior felony convictions were of a sexual nature and then made an impermissible propensity inference regarding the sexual assault case. See *State* v. *George A.*, 308 Conn. 274, 293, 63 A.3d 918 (2013) (evidence to establish propensity in sex related cases is admissible only if certain conditions are met). However, to determine that the jury might have drawn this inference because of the defendant's inability to testify about the nonsexual nature of his prior convictions, there must be some indication that the jury did not follow the trial court's instruction to disregard M's disclosure about the defendant's wish not to return to jail. See, e.g., *State* v. *Holley*, 327 Conn. 576, 618, 175 A.3d 514 (2018); see also id., 629. The defendant does not argue that there is any indication of such but, instead, argues that the trial court's "rote reliance" on this legal principle was an abuse of its discretion. Not only has this court repeatedly reaffirmed the principle that the jury is presumed to have followed the trial court's instruction in the absence of any indication to the contrary, but we have also stated that "instructions are far more effective in mitigating the harm of potentially improper evidence when delivered contemporaneously with the admission of that evidence, and addressed specifically thereto." (Internal quotation marks omitted.) Id., 618. In the present case, the jury was excused immediately following the improper statement at issue, and, upon its return, the trial court promptly stated that it was going to strike M's last statement and that it was not to be considered at any point during deliberations. Thus, I will presume that the jury followed the trial court's instruction to disregard M's comment and, thus, did not draw an impermissible propensity inference.

Harmlessness is further supported by the collateral

nature of the defendant's proposed testimony. To the extent any testimony improperly was excluded, it was not central to, or even a part of, the defense. See *State* v. *Rinaldi*, 220 Conn. 345, 357–58, 599 A.2d 1 (1991) (improper exclusion of evidence central to defendant's defense was not harmless error). The testimony did not, for example, relate to the credibility of a significant witness who had testified at the trial. Cf. *State* v. *Culbreath*, 340 Conn. 167, 197, 263 A.3d 350 (2021) ("[when] credibility is an issue and, thus, the jury's assessment of who is telling the truth is critical, an error affecting the jury's ability to assess a [witness'] credibility is not harmless error" (internal quotation marks omitted)). The proposed testimony concerned only one statement that the jury is presumed to have disregarded, as I have noted.

Moreover, despite the defendant's argument to the contrary, the trial court's conclusion, although improper, did not specifically preclude the defendant from testifying as to the nonsexual nature of his prior convictions, and it certainly did not preclude the defendant from denying the allegations against him. Finally, as detailed in the majority opinion, the evidence was overwhelming as to all the charged offenses, with substantial corroboration of the various sexual assault charges. Accordingly, I have a fair assurance that the improperly excluded testimony did not substantially affect the verdict in the sexual assault case.

Because I would affirm the defendant's convictions, but for reasons different from those stated in the majority opinion, I concur in the judgment of the court.

[1] The trial court rendered judgments, in accordance with the jury's verdicts, convicting the defendant of the following offenses charged in the sexual assault case: three counts of sexual assault in the first degree, in violation of General Statutes § 53a-70 (a) (2); one count of sexual assault in the second degree, in violation of General Statutes § 53a-71 (a) (1); three counts of risk of injury to a child, in violation of General Statutes § 53a-21 (a) (2); and one count of strangulation in the first degree, in violation of General Statutes § 53a-64aa (a) (1) (B).

The trial court rendered judgments, in accordance with the jury's verdicts, of the following offenses charged in the threatening case: one count of threatening in the second degree, in violation of General Statutes § 53a-62 (a) (2); and one count of disorderly conduct, in violation of General Statutes § 53a-182 (a) (1).

[2] I agree with the majority's comprehensive recitation of the facts, procedural history, and the parties' arguments in this case. For the sake of brevity, unless otherwise necessary, my discussion of this case's facts and procedural history is confined to my analysis of the defendant's specific claims on appeal.

[3] Practice Book § 41-19 provides: "The judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together."

[4] In *State* v. *Boscarino*, supra, 204 Conn. 722–24, "we . . . identified several factors that a trial court should consider in deciding whether a severance [or denial of joinder] may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any

prejudice that might have occurred." (Internal quotation marks omitted.) *State* v. *LaFleur*, supra, 307 Conn. 156.

[5] Requiring complete congruence in the cross admissibility of the underlying evidence necessary to establish each charge could also effectively prevent any two cases from being cross admissible. It is not difficult to imagine, for instance, testimony regarding the age of a victim being necessary to establish an element of one crime but having no legal relevance to the commission of the second crime and, thus, being deemed inadmissible on that basis with respect to the trial for the second charge. Based on the defendant's rigid conception of cross admissibility, this scenario would preclude joinder of the two cases, despite *evidence of* both crimes being admissible in both cases.

[6] It appears that, given the posture of the present case, the majority frames its cross admissibility inquiry in terms of relevance, stating that evidence is cross admissible if it is relevant and has probative value exceeding any unfairly prejudicial effect. See part I of the majority opinion. Although evidence must always be relevant to be admissible, I emphasize that relevance is not the only evidentiary doctrine that permits, or potentially precludes, a finding of cross admissibility for joinder purposes. See *State* v. *Payne*, supra, 303 Conn. 543 n.3.

[7] I acknowledge that I must review the entire record for whether we can infer that the trial court considered any unduly prejudicial effect of admitting evidence of the conduct giving rise to the sexual assault, risk of injury, and strangulation charges in the threatening case, and weigh it against the probative nature prior to its ruling on cross admissibility. See *State* v. *James G.*, supra, 268 Conn. 395. Although the trial court's discussion prior to deciding the state's motion to consolidate leaves me assured that it considered the prejudicial effect of the threatening and disorderly charges on the sexual assault case, it does not provide me with the same assurance that it completed the cross admissibility analysis by considering the prejudicial effect of the sexual assault, risk of injury, and strangulation charges on the threatening case. Specifically, the trial court's discussion expressly referenced "adding a disorderly conduct and a threatening charge to the two sex assault charges . . . ." Further, the trial court was certainly not considering the first degree sexual assault and first degree strangulation charges when it stated that the crimes were "not [violent] to the extent it's brutal or shocking violence on the defendant's part." Indeed, the trial court specifically stated that it was "setting aside the sex assault charges" in its discussion of whether the crimes were brutal or shocking. Additionally, the trial court also never directly addressed defense counsel's assertion during argument on the motion to consolidate that the "sexual assault cases certainly are shocking" and would prejudice the defense in the threatening case with mentions of "digital penetration [and] cunnilingus with minor children . . . ."

[8] I respectfully suggest that the majority understates the gravity of the defendant's conduct in the sexual assault case when it acknowledges that "any sexual assault on a child is . . . brutal and shocking," but then characterizes "the assaults in the present case [as] not unusually so." Part I of the majority opinion. I suggest that the proper focus is not whether the sexually assaultive acts on J and L were more or less brutal than those committed in other child sexual abuse cases, although I disagree with the majority's suggestion that they were not extreme in their brazenness and violence given the strangulation aspects of this case. In any event, I respectfully submit that the details of the sexually assaultive conduct were sufficiently different in kind from the acts that gave rise to the threatening charges that they would arouse the jurors' emotions so as to consider the defendant a sexually violent predator, rather than a particularly obnoxious and angry drunk.

[9] Specifically, the state argues that defendants in threatening cases frequently argue that their words were "mere puffery," rendering it necessary for the jury in this case to learn about the defendant's sexual abuse of J and L to establish the defendant's motivation for making threats in violation of the statute. The state further argues that evidence of the sexual assaults would also be relevant to establish the elements of disorderly conduct pursuant to General Statutes § 53a-182 (a) (1), specifically, that the context of why M and A were patrolling outside the house and what led the defendant to the home is necessary to evaluate whether the defendant engaged in violent or tumultuous conduct intending to cause inconvenience, annoyance, or alarm.

[10] I note that, upon overruling defense counsel's hearsay objections to S's statements, the trial court granted her request for jury instructions limiting the use of S's statements calling the defendant a "child molester" and a

"pedophile son of a bitch" and indicated that they were not admitted for the truth of the matter asserted but, rather, to show their effect on the listener.

[11] I recognize that evaluating undue prejudice pursuant to § 4-3 of the Connecticut Code of Evidence in connection with the cross admissibility determination may be consistent with, and accomplishes the aim of, the second *Boscarino* factor. See, e.g., *State* v. *Best*, 337 Conn. 312, 322–23, 253 A.3d 458 (2020) ("[t]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the [party against whom the evidence is offered] but whether it will improperly arouse the emotions of the jur[ors]" (internal quotation marks omitted)). Thus, on this record, the trial court exceeded its obligations when it reviewed the *Boscarino* factors following its determination that the evidence was cross admissible. See *State* v. *LaFleur*, supra, 307 Conn. 155.

[12] With respect to the other two *Boscarino* factors, I observe that the defendant presents no discernable argument as to the third *Boscarino* factor, namely, the consideration of the duration and complexity of the trial, likely because this was not a particularly long or complex trial, with only four days of evidence. As to the first *Boscarino* factor, the defendant argues that, although the dates related to each case were discrete, there was "a confusing cast of witnesses, mostly related to each other," and that joining the trials changed the temporal and geographical scope of each case. In response, the state argues that there is little to no risk that the jury in the present case would have been confused in evaluating which evidence applied to which charge. I agree with the state on this point.

As the defendant notes in his brief to this court, the events leading to the charges in the two cases occurred on entirely different days. The informations concerned different victims, as the sexual assault case pertained to J and L, whereas the threatening case pertained to S, A, A's partner, and M. Each case involved different locations and distinct factual scenarios, with the disorderly conduct charges in particular arising at A's home in Prospect. Cf. *State* v. *Brown*, 195 Conn. App. 244, 252–53, 224 A.3d 905 (two counts of second degree breach of peace, among other charges, involving same location and victim, but different dates, times of day, and injuries, were discrete and easily distinguishable), cert. denied, 335 Conn. 902, 225 A.3d 685 (2020). Accordingly, I conclude that the first *Boscarino* factor, namely, confusion as to the applicable factual scenarios, was not present.

[13] In the present case, the trial court instructed the jury: "Now, the defendant is charged with ten separate counts in a long form information. The defendant is entitled to and must be given, by you, a separate and independent determination of whether he is guilty or not guilty as to each of the counts—each of the counts charged as a separate crime.

"The state is required to prove each element in each count beyond a reasonable doubt. Each count must be deliberated upon separately. The total number of counts charged does not add strength to the state's case. You may find that some evidence applies to more than one count in the information.

"The evidence, however, must be considered separately as to each element in each count. Each count is a separate entity. This includes a separate consideration as to the charges related to each victim and the evidence pertaining to each victim. You must consider each count separately and return a separate verdict for each count. A decision on one count does not bind your decision on another count. This means you may reach opposite verdicts on different counts."

[14] Although I conclude that the trial court's instructions, on the specific facts of the present case, were sufficient to mitigate any prejudice from the improper joinder, it would have been "preferable" for the court to have been more specific in instructing "the jury that the cases had been consolidated solely for the purpose of judicial economy," with the specific sexual assault allegations not to be considered as proof in the threatening cases. *State* v. *Norris*, 213 Conn. App. 253, 287, 277 A.3d 839, cert. denied, 345 Conn. 910, 283 A.3d 980 (2022). This instruction would have been consistent with the limiting instruction it gave with respect to S's accusatory statements that precipitated his conduct at the after-party, made in response to defense counsel's hearsay objection. See footnote 10 of this opinion. I note, however, that the defendant did not request a specific instruction to this effect with respect to joinder.

[15] While instructing the jury following summations, the trial court reiterated: "Any testimony that has been stricken or excluded, again, is not evidence."

[16] I note that the majority concludes, sua sponte, that the record is inade-

quate for review of this claim because it does not squarely reflect (1) the reason for the defendant's ultimate decision not to testify, and (2) whether the defendant intended to testify only that his prior conviction was nonsexual, or instead, deny his guilt with respect to the charged offenses. See part II of the majority opinion. I respectfully disagree.

First, given the ample arguments offered by counsel and the trial court's clear ruling on this point, the absence of this proffer relates to the strength of the defendant's evidentiary claims on their merits, and not whether the record is adequate for review. Consistent with the state's not challenging the adequacy of the record for review, I believe that the majority's analysis conflates the adequacy of the record for review with the extent to which the defendant has established the merits of his claim that the trial court abused its discretion by denying him permission to testify as to the nonsexual nature of his criminal record. Because a review of the transcripts fully establishes what happened before the trial court, thus setting the factual predicate for the defendant's claim on appeal, I conclude that it is adequate for review and reach the merits of the defendant's claims. See, e.g., *State* v. *Correa*, 340 Conn. 619, 682–83, 264 A.3d 894 (2021); *State* v. *Edmonds*, 323 Conn. 34, 64, 145 A.3d 861 (2016); *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232–33, 828 A.2d 64 (2003).

Second, in any event, the topics of the defendant's proposed testimony are not outcome determinative with respect to the correctness of this particular ruling because his veracity and credibility would have become relevant as soon as he took the stand to testify as to *any* topic in his own defense.

[17] Section 6-8 (a) of the Connecticut Code of Evidence provides: "Cross-examination and subsequent examinations shall be limited to the subject matter of the preceding examination and matters affecting the credibility of the witness, except in the discretion of the court."

[18] As I stated, the prosecutor argued that further inquiry would be relevant to the defendant's truthfulness and veracity. However, the trial court had already ruled that the prior convictions were not relevant for use against the defendant, or his cohort in the robberies, who had already testified as a witness for the state without the prior convictions being introduced.

[19] I also note that the opening the door doctrine "operates to prevent a defendant from successfully excluding inadmissible prosecution evidence and then selectively introducing pieces of this evidence for his own advantage, without allowing the prosecution to place the evidence in its proper context." (Internal quotation marks omitted.) *State* v. *Brown*, 309 Conn. 469, 479, 72 A.3d 48 (2013). This was not the concern in the present case.

[20] Although there are certainly other measures the defendant could have requested, and the trial court could have taken, to further remedy the inadvertent disclosure, the question presented here is the narrow evidentiary issue of the limited circumstances in which testimony "opens the door" to inquiry into inadmissible evidence.

––––––––––––––––––––––––